OPERATION GUIDE

| DATE | GENERAL CLASSIFICATION | SUBJECT | NUMBER |
|---|---|---|---|
| **04-18-2018** | **Claim Practices**<br>**Fire** | **Wind/Hail Roofing Guidelines** | **75-160** |

**Table of Contents**


I. PURPOSE
II. INVESTIGATION/INSPECTION GUIDELINES
- A. When to Inspect
- B. Prior to the Inspection
- C. What to Inspect
- D. Inspection Safety
- E. Photographs
- F. Test Squares
- G. Measurements
- H. Diagrams/Sketch
- I. Aerial Measurement Services
- J. Other Appurtenances

III. ADJUSTMENT GUIDELINES
- A. Repair vs. Replace
- B. Footfall
- C. Composition Roofs
- D. Wood Roofs
- E. Tile Roofs
- F. Metal Roofs
- G. Substitution of Roofing Materials
- H. Mechanical Damage
- I. Roof Decking
- J. Composition Roofing Installed Over Wood Shake/Shingle Decking Surface

IV. ROOFING ESTIMATICS
- A. Waste and Rounding
- B. Split Coding
- C. Steep Charge
- D. Two-Story Charge
- E. Accessibility
- F. Roof Openings
- G. Other Appurtenances
- H. Valleys
- I. Starter strips
- J. Hip and Ridge Caps
- K. Self-Adhered Waterproof Membrane
- L. Overhead and Profit
- M. Depreciation
- N. Roofing Product
- O. Sealing of shingles

V. TEAR-OFF
VI. ROOFING LOCATOR SERVICE
VII. USE OF EXPERTS/ENGINEERS
VIII. SUBROGATION (ROOF)
IX. CODING
X. PRIOR DAMAGE – ROOF
- A. Prior Roof Claim, No Repairs Completed
- B. Prior Roof Claim, Roof Replaced, Tear-off Not Completed
- C. Prior Roof Claim, Damage Not Repaired, New Loss After Replacement Cost Benefits Expired
- D. Prior Roof Claim, Damage Not Repaired, New Loss Before Replacement Cost Benefits Expired


EXHIBIT
26

E. Prior Roof Claim, Damage Not Repaired, Insured took Reasonable Steps to Mitigate and Arrange for Repairs
F. Prior Roof Claim, Damage Was Fully Repaired, But The Insured Spent Less Than Was Estimated To Repair
G. Prior Roof Loss, Insured Did Not Present Claim Or The Prior Claim Was Less Than The Deductible
XI. MATCHING - UNDAMAGED EXTERIOR BUILDING MATERIALS
XII. ROOFING PRODUCTS – LIMITED OR NO AVAILABILITY
XIII. ROOF WARRANTIES
XIV. BUILDING CODE/ORDINANCE AND LAW
XV. COMMUNICATION WITH THE POLICYHOLDER
XVI. ADDITIONAL INSPECTION GUIDELINES
XVII. APPRAISAL/ADR/ARBITRATION

## I. PURPOSE

This Operation Guide provides guidelines for handling roof claims consistent with Our Commitment to Our Policyholders and the Compliance Statement. In general, the guidance provided is applicable to all policy forms unless otherwise indicated in the Operation Guide. Review the policy form and/or endorsement(s) to confirm the specific contract language and/or limits which are applicable to an individual claim.

If a policy provision or application is more restrictive than the law of the jurisdiction, then the law of the jurisdiction will apply. Also, there may be situations where the Enterprise position is broader than the law of the jurisdiction. In such situations, you should follow the Enterprise position. If policy wording in the jurisdiction conflicts with any of these guidelines or in case of unusual claim situations, contact claim management.

Top of Page

## II. INVESTIGATION/INSPECTION GUIDELINES

A. When to inspect

Wind: Wind claims involving minor damage may be handled by phone. A field inspection may be necessary when damage is reported to multiple slopes, interior damage or when the age and condition of the roof would make the roof more susceptible to damage.

Hail: A field inspection should be completed on all claims reported with potential hail damage.

When it is determined that a field inspection is appropriate; losses involving roofs should include an on-roof inspection where safe and practical to do so.

Removal of snow and ice from roofs to allow for an inspection: Refer to OG 75-20, Water Damage Losses Section VIII. Winter Weather Claims Involving Ice Dams or Weight of Ice, Snow or Sleet Ice F. Removal of Snow and Ice from Roofs and Gutters or guidance.

If it is necessary to meet with a contractor, arrange to meet at the insured's risk. Travel to the location in the company-provided transportation.

B. Prior to the Inspection

Prior to the inspection, obtain information from the policyholder related to the type of damage he or she may have noted to the exterior, interior, or other building structures or appurtenances. If roof damage is reported, inquire as to the type of roof surface, age and if the home is a one or two-story structure. When interior damage is reported, clarify the extent of damage, for instance if the damage is to one or multiple rooms.

Weather information: When inspecting wind/hail claims, having information about the weather event can be valuable. Information which may be available includes, but is not limited to, the direction of the storm, size of hail, wind speed and amount of rainfall. This information can be obtained in various ways including weather service websites and conversations with the policyholder. Review the policy information and loss history as outlined in OG 75-01, First Party Claim Handling requirements.

Refer to: Quality First Contact Guide - Fire

C. What to Inspect

Exterior: Inspect exterior property and note findings during the inspection. Walk completely around the risk, noting damage to any and all portions of the building, as well as any outbuildings, fences, gutters, decks, air conditioning

condensing units and other structures or appurtenances. Evaluate damage or lack of damage to covered property during the inspection. Document the claim file appropriately.

Interior: When interior damage is noted, inspect the interior to evaluate if the damage is related to any damage to the roof surface. Ask the policyholder when the damage was first noticed and if there is damage to one or multiple rooms. Inspect all areas of damage. Evaluate damage or lack of damage to covered property during the inspection. Document the claim file appropriately.

Roof: Initially, inspect the overall roof to establish its general condition and extent of damage. Consider the type of storm, direction of the wind/hail, and the size/shape of the hailstones in that area. Inspecting other items such as gutters, vents, skylights, decks, outbuildings, air conditioning condensing units, and fences may assist in establishing if the roof may have sustained damage.

If the roofing is deteriorated, but no damage due to a covered peril is noted, determine if the roof can be walked on without causing substantial damage. In rare situations, the most appropriate course of action is to examine and photograph the roof from several points around the perimeter without actually walking on the roof. Questions should be reviewed with management.

During the inspection, when safe and practical to do so, document the approximate age, condition of roof materials, evidence of roofing underlayment such as felt or self-adhered waterproof membrane (commonly referred to as ice and water shield) , the number of layers, pitch of the slopes as well as the type of roof surface.

Resources available to assist in identifying the type of roof surface may include:

- The Roofing Locator Service is a tool that can assist with shingle identification for all types of roof surfaces. Refer to Section VII. Roofing Locator Service.

- The policyholder may be able to provide information that may assist with the identification of the type of roof surface. For instance building records, repair receipts.

D. Inspection Safety

At any phase of a claim investigation, circumstances may arise that make the inspection/investigation unsafe or unreasonable. This can include times when an individual is creating a distraction which creates an unsafe situation or makes completion of a thorough and complete inspection not possible. When such situations arise:

- In accordance with Workplace Security Policy take safety measures to prevent a threat or violent act from being carried out.
- If safe to do so, advise the insured:
  - You will be unable to complete the inspection/investigation, and
  - Will return or continue when the circumstances giving rise to the situation have been remedied, and
  - The inspection may be done safely without interruption

Advise your management immediately when these situations arise and report any workplace violence threats by:

- Filling out the Threat Report Checklist located in SFNet, State Farm Forms, under Administrative Services, in the Security folder, or
- Call the Threat response Hotline, available 24 hours a day at (309) 766-0911.

E. Photographs

Photographs should give a clear indication of the extent of damage involved or lack of damage. The photographs should reflect the basis of the adjustment and support the decisions made. Judgment should be exercised to determine which photographs are appropriate for documenting the claim file.

The following are the type of roofing photos that may be secured and documented in the claim file when safe and practical to do so:

- Risk photo

- Overview photos of the entire slopes which depict the number and type of vents on the roof surface

- Overview and close up photos of every test square when applicable

- Close up photos clearly depicting damage or lack of damage
- Close-up photos to document and depict the type of roof materials and condition of the roof
- Photos depicting the number of layers on the roof surface and roof accessories (for example - vents, flashing, gutters, skylights, valleys, solar panels)
- Take photos to document any interior damage and undamaged areas pertinent to the claim presented

Refer to: OG 75-01, First Party Claims Guidelines & Requirements, Section III. D. 8. Photographs.

F. Test Squares

Test squares should be used when inspecting all types of roof surfaces to evaluate damage resulting from hail when safe and practical to do so. Test squares are not necessary for claims involving wind damage only, since wind damage is generally apparent and not always evenly distributed over the roof.

On hail claims, test squares are usually made on a 10x10 area. Mark with a chalk/lumber crayon a 100 square foot sample area (or test square) that is representative of the damage or lack of damage found on that slope. Mark and count the number of damaged shingles within the test square. Damage is determined by the number of damaged shingles, not individual tabs. On flat roof surfaces mark and count a representative sample of the damage found within the sample area.

Hail damage on a roof can vary from slope to slope, depending on the pitch and condition of each slope and the direction of the hail. Complete test squares on an appropriate number of slopes to evaluate the damage to the entire roof. In cases where the slopes have similar damage, complete a test square for each direction. In cases where the damage varies or directional test squares are not indicative of the overall roof, complete additional test squares where needed.

Test squares are not needed in situations where the inspection indicates no hail damage exists or a total loss from heavy hail damage applies. In these situations, the damage, or lack thereof, should be apparent from the initial inspection, and documented by photographs and claim file notes.

G. Measurements

When an inspection is appropriate and it is safe and practical to do so, measure as accurately as possible and document the measurements in the claim file as follows:

- It is preferable that diagrams be completed using the Sketch function within Xactimate. When Sketch is used, it is not necessary to create both a handwritten diagram and sketch.
- If any covered damage to the roof surface is noted, the entire roof should be measured and documented in the claim file.
- Aerial Measurement Services (AMS) may be used on an individual claim to provide a diagram and measurements of the roof system. The report may be ordered before the inspection to aid in the measurements of the roof system. Refer to: Section II. Investigation/Inspection Guidelines H.

Refer to: OG 75-07 Structural Loss Claim Handling Section II. Structural Loss Claim Handling Procedures D. Investigation of Structural Losses 3. Diagrams/Measurements

H. Diagrams/Sketch

When an inspection is appropriate and covered damage is noted, a diagram of the entire roof surface should be completed if it is safe and practical to do so.

The claim file or diagram should show the following:

- Accurate measurements of the entire roof and the computations used to establish the square footage of the damaged areas. If the Xactimate program is used to calculate the damaged area or roof surface, it is not necessary to reflect the computations separately in the claim file.
- The location of damage and test squares should be indicated on the diagram, Roofing Scope Sheet, Sketch, or noted in the file through the scope notes or file notes. Other appurtenances may be indicated on the diagram or Sketch or noted in the file through the scope notes or file notes.

I. Aerial Measurement Services

Aerial Measurement Services (AMS) may be used on an individual claim to provide a diagram and measurements of the roof system. AMS is not used to determine the scope of damage and does not replace the physical inspection of the property.

When AMS is used, the claim handler should receive a copy of the AMS report prior to the inspection. During the inspection the claim handler should complete the following:

1. Verify that the AMS report provided is for the correct property.
2. Claim handler should review aerial measurement report and compare it to visual observation of roof. If these visual observations create questions with respect to accuracy of measurements contained in vendor report, claim handler must measure the pitch and eave length of the predominate slope and compare these measurements to the vendor report. If the measurements do not agree with the measurements provided in the AMS report, the claim handler should proceed with manually measuring the entire roof. The AMS help desk should be notified that the measurements were corrected on the AMS report
3. If no questions/concerns arise from visual inspections of aerial measurements report and roof, claim handler may handle the loss relying upon the report. The claim handler should document the file indicating the AMS measurements were used or the roof was re-measured.

J. Other Appurtenances

Roof vents, skylights, gutters, downspouts, drip edge, metal valleys, flashing, patio covers, satellites, a/c condensing units and solar panels may also have sustained wind or hail damage. The gauge or thickness of the metal/aluminum or plastic materials varies from product to product making some more or less susceptible to damage. Note any damage observed to these appurtenances during the inspection as this may provide information about the size and type of damage and will help the claim handler properly account for these items when preparing the estimate.

Other appurtenances are but one piece of the investigation process in assessing whether or not wind or hail damage exists to the roof system. Keep in mind these items can be damaged by many things, including fallen trees, property debris, installation, or in some cases, footfall.

Solar panels: Solar panels located on the roof should be inspected as they may have sustained wind or hail damage. While completing the inspection document the location, type of materials used (if known), and extent of damage observed. The solar panels may need to be removed and reset to allow for repairs/replacement of the roof system. Additional investigation may be needed to evaluate the type of materials, extent of damage and appropriate repairs to the solar panel.

Appropriate caution should be used when inspecting solar panels as these panels may be energized.

Patio Covers: During the investigation of patio covers, examine the patio cover for a covered loss. On those claims where a covered loss exists the following information may be noted, the number of posts, special trim pieces, how the cover is attached to the structure, any special cover and if known, who installed the cover.

Top of Page

## III. ADJUSTMENT GUIDELINES

A. Repair vs. Replace

When determining whether a roof or slope should be repaired or replaced, compare the cost to repair actual damage caused by a covered peril to the cost to remove and replace the area damaged by a covered peril. For composition roofs, the cost to repair is compared to the cost to remove and replace a one-story, walk-on pitch roof. For other shingle/shake roofs, the cost to repair is compared to the cost to remove and replace the shingles/shakes of a one-story, walk-on pitch roof.

When the cost to repair actual damage to a composition roof or slope approaches or exceeds 50% of the cost to remove and replace the damaged area, determine whether the slope should be replaced or repaired. The same applies to other shingle/shake roof surfaces which are not composition, when the cost to repair the roof approaches or exceeds 80% of the cost to remove and replace the slope.

The following may be used to determine repair vs. replace for shingled/shake roofs of any type. This would not be

appropriate for other types of roof surfaces. If the damage found in the test square approaches or exceeds the total number of damaged shingles per square identified by the repair vs. replace calculations, consider all roofing guidelines to determine if replacement is appropriate. Damage is determined by the number of damaged shingles, not individual tabs. This analysis should be completed on a slope by slope basis.

The repair vs. replace calculation is systematically created within Xactimate. The results of the calculation are based on the price list selected for each specific estimate. The chart can be accessed by following these steps in each estimate:

1. Click Project tab
2. Select Tools
3. Click Roof Slope Total vs Repair

Once you locate the applicable roofing type in the chart, the number in the Value column reflects the number of damaged shingles per square to consider when deciding whether to repair or replace a damaged slope, or the entire roof.

The repair vs. replace analysis outlined above should be used when adjusting hail losses where the damage is found randomly across the slope(s). This is not usually the case with wind damage, which is often confined to a certain area of the slope(s). In such cases, the use of test squares and the above calculations are not appropriate. Instead, consider the extent and location of the damage, along with all roofing guidelines, in determining whether repair or replacement of the slope is warranted.

In some situations it may be appropriate to replace the shingles on an undamaged slope based on the total area of roof being replaced or other factors used to evaluate the claim. In these situations, document the file as to the reasons for the action taken on that claim.

Badly deteriorated roofs can present problems when repairing since replacing the damaged shingles/shakes may involve replacing some adjacent shingles/shakes. Because of the poor condition of the existing roofing, the roofer may damage two or three shingles/shakes for each one to be replaced. This is applicable to all types of roof surfaces.

The repair factor analysis may be applicable to all types of roof surfaces, other than composition, where test squares are completed. When evaluating if a roofing surface is repairable for all shingle/shake type roof surfaces, other than composition roof surfaces, the following steps are recommended:

1. Select a test square for the slope, and mark and count the damaged shingles/shakes.
2. Apply the following damage repair factors based on the general roof condition. Depreciation should align with the damage repair factor.

   0% to 50% worn = factor of 1.0
   50% to 75% worn = factor of 1.5
   75% + worn = factor of 2.0

   A slope that is 75 percent worn with 20 destroyed shingles/shakes found in the test square is figured as follows: 20 shingles/shakes multiplied by 2.0 = 40 shingles/shakes. Multiply 40 shingles/shakes by the cost to replace a single shingle/shake. If it approaches or exceeds 80 percent of the cost to remove and replace a square of shingles/shakes consider all factors and determine whether repair or replacement is appropriate.

   In all cases and for all types of roof surfaces consider factors such as the age and condition of the existing roofing, type of roofing, and feasibility of repairs when determining whether to repair or replace a slope. Document the basis of the decision in the claim file with good photographs, diagrams, and file notes.

B. Footfall

Footfall may occur to all types of roof surfaces. This damage can be caused by walking on the shingle/shake or other type of roof surface. This damage may appear as cracks, splits, broken corners or tears on the shingle/shake or roof surface.

Consider limiting the number of inspections to reduce the amount of footfall damage.

Damage caused by footfall during a claim handlers' inspection is included in our adjustment. Add the number of shingles damaged by footfall to the number of shingles damaged by an insured peril and then calculate the total number of shingles damaged per square by applying the appropriate repair factor. Footfall damage is subject to the policy deductible except where there is no damage except for the footfall damage by the claim handler. In this circumstance the insured is reimbursed without taking a deductible.

There is no specific exclusion for footfall damage, and this is covered absent intentional damage done by or at the direction of the insured. Additional investigation may be needed to determine the number of occurrences and date(s) of loss. Advise the insured that the more people that walk on the roof, the more damage that will occur, and advise of their responsibility to mitigate further damage.

In cases where substantial repair or replacement is necessary due solely to footfall, consult with management.

C. Composition Roofs (asphalt, fiberglass):

Damage occurs to roof coverings when water shedding ability or the life expectancy of the material is reduced. Damage from hail, wind, normal weathering, and defects may be observed to a composition roof surface. On a composition roof surface, this could include bruising, fractures, punctures or excessive granular loss.

Bruising: On composition roofing, a bruise appears as a circular scar usually the size of the hailstones, or larger. It appears as a shaded or slightly darkened area on the shingle with some granular loss frequently present. A bruise is created when a hailstone strikes the surface of a shingle, crushing the paper or fiberglass mat, leaving a dent or "bruise." A bruise, although difficult to detect at times, does not appear as severe damage but affects the longevity of the shingle. As a result, bruises cause premature deterioration and weathering, eventually resulting in a hole in the shingle. One bruise on a shingle surface is sufficient to consider that shingle damaged. In many cases, careful inspection is required to detect such "bruises."

Fractures/Punctures: A hail impact which causes a crack or a puncture through the mat affects the water shedding ability of the shingle and is considered damage. Fractures and punctures may be difficult to detect and an examination of the back side of the shingle may be necessary to detect fractures and punctures.

Cracked, Checked, Split, Chipped, or Broken Shingles: Normal weathering of composition shingles is often evidenced by cracked, split, or checked surfaces between three and five inches from the shingle's bottom edge. This area of the shingle is vulnerable to horizontal cracking and checking as a result of moisture runoff from the overlapping shingle above. Usually, the seal tab of this shingle is intact. Damage in this area of the shingle lacking the discernible, circular or semi-circular impact mark or bruise is unlikely to have been damaged resulting from hail. Wind seldom causes such damage if there is no other evidence of wind damage. Similarly, the three exposed edges of the shingle are often "scuffed" or damaged during the shingle's original application or due to deterioration. This damage, when lacking the presence of a discernible circular or semi-circular impact mark, is typically the result of deterioration and not caused by hail damage.

Splices: A splice occurs during the manufacturing process of a shingle when the continuous roll of matting material ends and new roll beginnings. These rolls are spliced together at this point to allow continuous production of the shingles.

Curling or cupping: Sometimes composition roof shingles can show curling or cupping. Curling or cupping may be a result of age or wear and tear, including improper roof ventilation and prolonged sun exposure. Shingles that are curled may appear concave in their center with the corners and possibly the edges of the shingle curled downward, or have a raised edge mostly along two sides of the shingle, but sometimes even along the edge.

Granular Loss: Granular loss occurs naturally and is inherent to composition roofing products as a result of weathering. The general rule is we will not pay for granular loss, since it does not affect the watertight integrity of the roof.

Granules serve two main functions on asphalt roofing, block ultraviolet light from the asphalt and provide color to the roof. During manufacturing of the shingles, excess granules are applied and the granules that are not embedded in the asphalt will naturally fall off. Severe granule loss could be an indication of a defective shingle. Granular loss is typically part of the natural aging process or may be the result of a manufacturing defect.

Hail can cause actual damage to composition roofing in conjunction with heavy granular loss. Where there is excessive granular loss accompanying actual roof damage caused by hail, and it affects the integrity and utility of the roof, consider payment for granular loss. Review these types of losses with claim management.

Wind: Wind damage to asphalt shingles occurs when a portion of the shingle is blown off the roof, or the shingle is

bent backwards and a fracture forms through the matting material. If the wind caused the seals to break, it may require hand sealing.

Unsealed shingles: Most composition shingles are manufactured with a heat activated sealant strip, which bonds the shingles together once applied to the roof and exposed to sufficient heat. At times, the bond between courses may become less flexible and break. This breakage may be due to a number of factors, such as cold weather, footfall, improper adherence of the original sealant, or wind. It is important to note any unsealed shingles that may be observed during the inspection. The claim handler should consider whether the breakage of the bond was caused by accidental direct physical loss, which may include, looking for evidence of tearing on the shingle below or by observing residue underneath the shingle from the sealant. Refer to: Section IV. Roofing Estimatics - O. Sealing of Shingles.

Heat Blisters: Heat blisters are small bubbles or crater-like holes that are generally less than 1/2" in diameter. Heat blisters result from a manufacturing defect during the production of the shingle and are not damage caused by hail. Mere exposure to normal elements can open blisters. In the absence of any other evidence of direct damage from a covered peril to the roof, broken heat blisters alone are not considered evidence of covered damage. Consider payment for this damage if the heat blister(s) were broken by hailstone impact.

D. Wood Roofs

Damage occurs to wood roof coverings when water shedding ability or the life expectancy of the material is reduced. Damage from hail, wind, normal weathering and defects may be observed to a wood roof surface.

Marks/scratches: Wood shingles/shakes that show only surface marks or scratches are not considered damage requiring repair/replacement of the shake/shingle. This does not affect the intended purpose of the wood shingles/shakes and disappears with weathering.

Splits: A wood shingle/shake is damaged only when the hailstone causes it to split and compromises its watertight integrity. This split typically offers a contrast in the colors or appearance of the shingle. The area newly exposed to the weather elements by the impact is generally unaffected by the weather and appears new and/or appears fresh since it has not been exposed to elements which alter the color of the wood such as rain, debris, and/or ultraviolet rays of the sun. This is in contrast to the weathered shakes/shingles which are greyer or more weathered in appearance since they have been exposed to elements such as rain, debris and/or ultraviolet rays of the sun. One of the main indicators of hail damage to a wood shake/shingle roof is splits in the roofing which may be affiliated with an impact mark. Splits resulting from hail will typically show the color of fresh wood. Weather splits may demonstrate an inverted "v" pattern which may be an indication that the split has developed over a period of time from normal weathering.

Cupping, curling, cracking: Cupping, curling and cracking is a natural aging process of a wood roof and is generally not considered accidental direct physical loss.

Wind: Wind damage to a wood shake/shingle occurs when a portion of the shake/shingle is blown off the roof.

E. Tile Roofs

Damage occurs to tile roof coverings when the water shedding ability or life expectancy of the material is reduced. Damage from hail, wind, normal weathering, and defects may be observed to a tile roof surface.

Chips and Cracks: Chips and cracks resulting from a hail stone impact would be considered damage resulting from hail. Chipping and cracking may also occur during the manufacturing or installation process which may not be covered damage.

Holes: When a hole is created in a tile from a hail stone, the underside of the tile will show chipping to the tile around the diameter of the hole. This chipping will be directed toward the roof surface.

Corner Cracking: A crack observed in the bottom right corner of one or more tiles is typically a result of an installation defect or normal wear and tear due to natural cracking which may occur in a weak area of the tile. Corner cracking of this nature is typically not a result of wind or hail damage.

Spalling/Flaking: Spalling and flaking is typically caused by weathering and impurities in the tile that experience a different thermal expansion or water absorption than the material around the impurity. Spalling and flaking of this nature is typically not a result of wind or hail damage.

Loose Tiles: Loose tiles may result from wind damage or when the system used to fasten the tiles fails. The claim

handler should carefully inspect the roof to determine if the loose tile(s) were caused by wind or were a result of normal wear and tear or an installation defect.

Efflorescence: This is the natural process of soluble salts which were dissolved by water and were left behind on the top of the tiles when the water evaporated. Efflorescence is typically not a result of wind or hail damage.

Installation Techniques: Tiles can be installed using several different attachment methods. These methods may affect the reparability of the roof. Some of these methods would include screw down, nail down and foam adhesive or mortar applications. The attachment method should be considered when evaluating the reparability of the tile roof.

F. Metal Roofs

Metal roofs can be damaged by wind or hail. The same adjustment procedures should be followed when estimating damage.

It is important to note that some policies may have the exclusionary endorsement for cosmetic loss to the metal roof coverings caused by hail. Claim handlers should check the policy endorsements to verify if this exclusionary endorsement is applicable. If the endorsement is applicable, we would only pay for a loss caused by hail that allows the penetration of water through the metal roof covering or that result in the failure of the metal roof covering to perform its intended function of keeping out the elements over an extended period of time. When this endorsement is applicable it also extends to all flashings.

G. Substitution of Roofing Materials - (Policyholder request)

If the insured chooses to substitute a composition roof for an existing wood roof, prepare an estimate for the damage to the existing wood roof and issue an actual cash value (ACV) payment. Issue replacement cost benefits for the substitute materials up to the cost of repairing/replacing the existing roof. Release the replacement cost benefits in accordance with OG 75-51 Replacement Cost â€" Building Section IV Explanation of Replacement Cost to the Insured. Pay the ACV of the damage to the existing roof.

When substituting roofing materials (for example, replacing a wood roof with a composition roof), consider the type of decking required to make the substitution. Most wood roofs are installed over spaced decking, which will not accommodate composition shingles. Determine whether to install sheet decking in such cases based on the costs involved on a replacement basis. If it costs more to install sheet decking with composition shingles than it would cost to simply repair/replace the existing wood roof, then we will pay to repair/replace with wood shingles/shakes subject to the replacement cost provisions of the loss settlement conditions of the policy. If the alternate cost of composition shingles and sheet decking are less than or equal to the replacement of the wood roof, we would agree to the alternate method. In all cases, the insured must agree to the alternate method.

If a substitution is required because of building ordinances or laws, follow the procedure outlined in the above paragraphs. If the policy has a Building Ordinance or Law Endorsement, coverage may be provided for the improvements made necessary by the ordinance and/or law. Review of the Building Ordinance and Law coverage is recommended for coverage analysis as well as any other term, conditions, and limits of the policy/endorsement contract. Refer to OG 75-107 Optional Policy Provisions Section V.

H. Mechanical Damage

Mechanical damages are the result of human activity, and can be broken down into two separate categories:

1. Accidental Mechanical Damages
2. Intentionally Inflicted Mechanical Damages

Accidental mechanical damages may be caused by careless handling of materials, use of tools or objects that cause damage to the roof surface during the course of installation or repair, repairing roof mounted mechanical systems, trees or vegetation which are too close to the home, and foot traffic. For instance some types of accidental damage to roofing shingles are footfall, knife cuts, golf balls, nail holes from toe boards, shipping and handling and dragging equipment.

Intentionally inflicted mechanical damage means that the damage was purposely done and was not accidental in nature. Typically, the distribution of this damage is not random in nature, and a pattern may be observed. Some types of items that can be used to cause intentionally inflicted mechanical damages to roofing include, hand tools, coins, fingers, rocks and golf balls. (This is not all inclusive)

At times, mechanical damage of this type will crush granules, and these crushed granules cannot be seen until washed away from rain and the wind. When investigating mechanical damage, additional information to gather and document during the inspection includes but is not limited to the following.

- Is the distribution of the hail damage random?
- Is the size of the impacts random?
- Is there damage on the other areas of the dwelling?
- Is there damage to other houses in the area?
- Was the insured home during the storm?
- When did the insured first become aware of the damage?
- Who was on the roof or property prior to our inspection?
- Did the insured come home to a flyer/estimate that was not requested?

If, during the course of your investigation of the roofing system, you suspect the damage to be intentionally inflicted, contact management for directions on how to proceed and reference the following job aid:

Roofing Claims Investigation - Mechanical Damage Identified

I. Roof Decking

Wind or hail damage may result in accidental direct physical loss to the roof decking surface which may be covered. Hail damage may be observed when the size and impact of the hailstone penetrates the decking creating damage. Wind damage may be observed when the wind causes all or a portion of the decking to be removed or unattached from the building structure.

Pre-existing wear, tear, deterioration or rot to a decking surface may also be observed. This type of damage to the decking is typically not covered.

If in the course of removing/repairing the shingles unavoidable damage is caused to the decking surface, an allowance to repair the damaged decking surface may be included as part of the covered damage.

These claims should be reviewed individually with consideration of building codes, statutes or regulations which may apply. Questions should be reviewed with management.

J. Composition Roofing Installed Over Wood Shake/Shingle Decking Surface

Wind/hail damage may occur to a roof surface which is a composition roof installed over a wood shake/shingle decking surface. Evaluate the extent of damage and reparability as outlined in Section III. Adjustment Guidelines A. Repairs vs. Replace.

When there is covered damage to a composition over wood/shake shingle decking surface which can be repaired, the claim handler should estimate to repair the damaged shingles. Questions may arise as to whether or not the wood/shake shingle surface currently serving as the decking should be included as part of the repair. This should be evaluated individually on each claim by considering the following:

1. If the composition shingles can be repaired without impacting the integrity of the wood/shake shingle decking surface, no additional allowance is necessary for the wood shingle/shake shingle decking.

2. If in the course of removing/repairing the composition shingles unavoidable damage is caused to the wood shingle/shake decking surface, an allowance to repair the damaged decking surface may be included as part of the covered damage.

3. Wind or hail damage to the wood/shake shingle decking surface may be covered.

When there is covered damage to a composition over wood shake/shingle decking surface which requires replacement of the roof, estimate for the removal of both the composition shingles and wood/shake shingle decking surface. The replacement estimate should include replacement of wood sheet decking and one layer of composition shingles. Overlays on a roof with a composition roof installed over a wood shingle/shake decking surface are not recommended. Installation of a composition roof over a wood shake/shingle deck may result in a greater susceptibility to future damage.

These claims should be reviewed individually with consideration of building codes, statutes or regulations which may apply. Questions should be reviewed with management.

Top of Page

## IV. ROOFING ESTIMATICS

Explain the estimate to the insured, and give a copy of the estimate to the insured. Explain any replacement cost available to the insured after repairs are completed.

### A. Waste and Rounding

Waste may include: scrap, ridge cap, starter row, and valley overlap. Ridge or starter row material replacement may be estimated separately when the ridge or starter row is a different material than the roof (for example, tile ridge cap on a composition shingle roof) or the ridge is the only part of the roof that is damaged. If estimating ridge cap and/or starter row as separate items, consider an adjustment of the waste percentage used in calculating the roofing quantity.

Prior to applying a waster factor, review the Xactimate roofing code to determine if waste is already included in the unit price. If waste is not included and when estimating the replacement of a single slope or an entire roof, use the following guidelines in the waste calculation:

Flat roof Use 5%

Gable roof Use 10%

Hip roof Use 15%

After waste is added, round up to the next appropriate bundle. If waste is included in the unit price, use the actual square footage of the area being replaced without rounding to the nearest bundle or square.

Tear off or removal should not have waste included in the calculation.

### B. Split Coding

When replacing a roof, always split code the activity. This means using the Xactimate "-" and "+" activity codes for remove and replace instead of "&". This is so the removal amount can be properly estimated without waste included, and the replacement amount estimated including waste.

### C. Steep Charge

Use steep charges when the slope of the roof is 7/12 or greater. Include this charge only on those slopes or areas that require the additional amount. According to the Xactimate price list, this is an additional charge for *"lost labor productivity on a steep roof, due to working with roof jacks, additional toe board installation, and additional safety precautions."* The remove "-" activity steep charge is applied to the measurement of the area to tear-off (without waste). The replace "+" activity steep charge is applied to the total number of squares to install (with waste). Pay this charge up front in the ACV payment.

### D. Two-Story Charge

A two-story charge should be included for every two-story roof slope. According to the Xactimate price list, this is an additional charge for *"additional labor charge for lost productivity on a high roof (2stories or greater), due to accessibility and extra safety precautions."* A roof, or section of a roof, is considered two stories or greater about grade at the eve.

Include this charge only on those slopes or areas that require this additional charge. The remove "-" activity two-story charge is applied to the measurement of the area to tear-off (without waste). The replace "+" activity two-story charge is applied to the total number of squares to install (with waste). Pay this charge up front in the ACV payment.

### E. Accessibility

When there is limited accessibility to the insured location or roof, an additional labor charge to hand carry materials may be warranted. The same holds true for removal charges where accessibility is limited and causes a problem in the removal of debris from the insured location.

### F. Roof Openings

Address large openings in roof structures, such as skylights, in the estimate. Consider the damage caused to these items when removing the roof shingles/shakes.

G. Other Appurtenances

Roof Vents: When a roof is damaged by a covered loss, the vents may or may not have sustained damage. A structure can have several different types of vents that could be affected by damage differently, so evaluate each vent separately, and estimate accordingly. When estimating to remove/replace roofing, Xactimate pricing includes sufficient labor to manipulate or work around undamaged roof vents without causing damage to them; therefore, replacing or detaching/resetting roof vents solely because the roof is being replaced is generally not necessary.

If estimating to remove and replace composition shingles on an entire roof or slope that contains vents (turtle, ridge, or turbine) that are also being replaced, it is not necessary to separately estimate the removal of these types of existing roof vents. These types of roof vents are fastened in much the same way as the shingles and are normally removed along with and at the same as the shingles. Xactimate pricing includes sufficient labor to remove these types of roof vents as the shingles are being removed. Therefore, a separate removal activity is not necessary. Evaluate each situation based on the individual circumstances.

Drip Edge and/or Flashing: When a roof is damaged by a covered loss, the drip edge and/or flashing may or may not have sustained damage. When estimating to remove/replace roofing, Xactimate pricing includes sufficient labor to manipulate or work around undamaged drip edge and/or flashing without causing damage to it; therefore, replacing drip edge and/or flashing solely because the roof is being replaced is generally not necessary. Consideration may need to be given based on how the drip edge was installed relative to the installation of any roofing underlayment. Typically, roofing underlayment, which would include felt or self-adhered waterproof membrane, is installed under the drip edge along the rake of a roof and over the drip edge along the eaves. Evaluate each situation based on the individual circumstances.

Skylights: When evaluating damage to skylights, examine the unit for covered damage. Units with insulated glass may fog as a result of the natural aging process. As with roof vents, it is generally not necessary to detach/reset or replace undamaged units because Xactimate roof pricing includes sufficient labor to manipulate or work around them.

Photovoltaic Cells: Handle the repair or replacement of roofing products around, beneath, or incorporated with photovoltaic cells on a case-by-case bases. Remember that these cells can be energized so extreme caution is required during the inspection. If damage is noted to the photovoltaic system, specific information is needed such as:

- The manufacturer's name
- System size physical dimensions
- System output in volts and amps
- If the system is integrated into the roofing product or is it separated from the product
- Does the insured own the system, or does another entity own the system

If damage is noted to the surrounding roof covering, but not to the photovoltaic system, a qualified contractor may be able to detach reset a photovoltaic system that is not integrated into the roof product.

Solar Water Heater: Handle the repair or replacement of shingles around or beneath solar water heaters mounted on a roof on a case-by-case basis. Many factors come into play when determining when to detach and reset a solar water heater. If the legs are tall enough, there should be enough room to work under the panels; only requiring detaching a leg when necessary. Other situations may dictate the removal of the solar water heater to complete the roof repair/replacement. The system may need to be drained and capped then later recharged and put back into service. If the panels need to be detached and reset, recommend the policyholder use qualified trades person to properly handle the solar water heater.

Solar Panels: Handle the repair or replacement of shingles around or beneath solar panels mounted on a roof on a case-by-case basis. Many factors come into play when determining when to detach and reset the solar panels. If the legs are tall enough, there should be enough room to work under the panels; only requiring detaching a leg when necessary. Other situations may dictate the removal of the panels to complete the roof repair/replacement. If the panels need to be detached and reset, recommend the policyholder use qualified trades person to properly handle the solar panels.

H. Valleys

Additional material may be required for a properly constructed valley. Common valley construction techniques include open valleys, closed valleys and weaved valleys. Typically, valleys have additional material which sheds water. This material could include roofing underlayment (including felt or self-adhered waterproof membrane valley

metal, and/or 90lb roll roofing material). Careful inspection is needed to determine what material is used in the construction of the valley. Be sure to understand what is included in the appropriate Xactimate line item entry when completing or reconciling the estimate.

I. Starter strips

Starter strips are a specialty roofing product which assist in securing the butt edge of a roofing product to the roof plane and provide double layer coverage along the eave. When estimating, the waste percentage may include sufficient product which can be used for starter strips. If estimating starter strip as a separate item, consider an adjustment of the waste percentage used in calculating the roofing quantity.

J. Hip and Ridge Caps

Hip and ridge caps are specialty products designed to cover the area of a roof where two roof planes meet. When estimating, the waste percentage may include sufficient product which can be used for hip and ridge caps. If estimating hip and ridge caps as a separate item, consider an adjustment of the waste percentage used in calculating the roofing quantity

K. Self-Adhered Waterproof Membrane (commonly known as Ice and Water Shield)

Self-adhered waterproof membrane is designed to help prevent damage resulting from ice damming. This product may be required by building codes. When this product is required, the product should extend over the roof decking from the lowest edge of the roof surface to a point specified by the building code.

If a roof has a self-adhered waterproof membrane and that area is damaged by a covered loss, then the estimate should include the cost to replace the self-adhered waterproof membrane. Because of the self-adhering aspect of this product, it may be difficult to remove the self-adhered waterproof membrane during tear off of the roof and removal of the self-adhered waterproof membrane could cause the decking to delaminate, which could require replacement of the deck. Most manufacturers and building codes will allow for more than one layer of self-adhered waterproof membrane. If multiple layers of self-adhered waterproof membrane are not allowed, it may be necessary to remove and replace the affected roof deck to facilitate the repairs. Contact your management or Locator Services for additional information.

L. Overhead and Profit

Refer to: OG 75-07, Structural Loss Claim Handling - Section II. Structural Loss Claim Handling Procedures E. Evaluation of Structural Losses 2. Complete Estimate f. Overhead and Profit

M. Depreciation

Roofing is a depreciable building item. As such, roof claims may often involve replacement cost benefits due to the betterment involved in the replacement of some or the entire roof. Handle replacement cost benefits according to the guidelines set forth in OG 75-50, Betterment, Depreciation, and Actual Cash Value, and OG 75-51, Replacement Cost - Building.

N. Roofing Product

Limited or No availability - Refer to: Section XV. Roofing products - limited or no availability.

O. Sealing of shingles

When a determination has been made that the unsealed shingles are a result of a covered loss, an estimate should be obtained from a contractor to manually seal the tabs. Many manufacturers have guidelines for the best method to re-seal unsealed shingles. Handle each claim that involves unsealed shingles on a case-by-case basis.

Top of Page

## V. TEAR-OFF

Overlay of new composition roofing over an existing composition roof is a method of repair which may be allowed in some areas, however it is our company philosophy and guidelines to tear-off all layers when estimating to replace a roof surface.

When the reasonable repair requires replacement of the roof or a portion of the roof, tear-off of all roofing layers should be estimated without a deduction for depreciation and included as part of the ACV settlement on roof or slope replacement claims in all geographic areas.

When multiple layers of roofing are present, all roofing layers should be estimated for removal.

When tear-off was paid on a previous claim and the policyholder chose to overlay the roof, Refer to: OG 75-160 XI. Prior Damage - Roof

Top of Page

## VI. ROOFING LOCATOR SERVICE

The Roofing Locator Service (RLS) and Siding Locator Service (SLS) are web-based search tools designed to assist claims associates by providing a resource for identifying siding and roofing products.

Refer to: Locator Services

Top of Page

## VII. USE OF EXPERTS/ENGINEERS

Occasionally, State Farm® will seek the assistance of a roofing expert or an engineer to help determine the cause of loss, conduct damage and failure analysis, and/or evaluate reparability issues. At all times, the decision of how to resolve a claim rests with State Farm and must be based on all of the facts of the claim. Guidelines for the use of engineers are outlined in OG 70-96, Use of Engineering Firms in the Handling of First Party Property Claims or OG 70-94 Use of Independent Non-Engineering Experts in the Handling of First Party Claims.

Top of Page

## VIII. SUBROGATION (ROOF)

Covered roof damage may result in a subrogation opportunity. Information that is needed to support a successful roof investigation for subrogation includes, but may not be limited to, the identification of the type of roofing system and products involved, documentation of the roof condition, and damage and preservation of any evidence which may be needed to support a subrogation claim.

A qualified roofing engineer/consultant may be needed to evaluate the condition of the roof and to preserve evidence. Most information needed to investigate subrogation potential comes from places other than the roof structure itself. The homeowner or business owner may be a good source for records on the roofing system. If not, also consider the architect, roofing consultant, or roofing contractor as they may have the documents we need for our subrogation. These documents often confirm the product type used, roof design, and manner of construction.

The Statute of Limitations sets a maximum time period in which to file a claim or lawsuit. The Statute of Repose may preclude a claim or suit against a group or class of people (such as product designers, architects, or builders) after a certain time period of the product's life or completion. Claim handlers should review both the Statute of Limitations and any applicable Statute of Repose.

Refer to: OG 75-54, Subrogation

Refer to: State Codes, Laws, and Statutes

Top of Page

## IX. CODING

Claim management and claim handlers are responsible for accurate loss and payment coding. COL codes, comment codes and descriptors are located in OG 74-04, Payments and Coding and the Fire Loss Coding Manual.

Top of Page

## X. PRIOR DAMAGE - ROOF

Generally, damages which have been paid in a prior claim settlement by State Farm, but were not repaired or replaced after the first loss, would not be recoverable again if there was subsequent damage to the same property.

In the course of investigating, evaluating, and settling a current roof claim, it is important to review the insureds claim history.

The following section provides guidance for wind and hail loss roof scenarios involving prior damage.

A. Prior Roof Claim, No Repairs Completed

If the insured has not repaired the covered roof damages from a prior claim and has a new claim involving the same roof damage from the prior claim, handle the new claim in the following manner:

- Adjust the loss as a separate event, subject to the policy deductible.
- Prepare an estimate for all roof damages resulting from the current loss using the price list for the current date of loss. This may include the same roof damage estimated on a prior claim that was not replaced or repaired.
- Apply depreciation, if applicable. The age and condition of the damaged property, including prior roof damage, should be considered in determining the actual cash value of the current loss.
- Subtract the deductible for the new claim.
- Deduct prior payments for the roof damage that was not replaced or repaired.
  - Do not deduct amounts that were estimated for the roof, but were at or below the deductible.
- Pay the insured any difference.
  - If the ACV payment of the roof replacement exceeds the ACV payment to replace the roof on the prior loss, issue a draft to the policyholder for the difference between the ACV payment for the roof on the prior loss and the ACV payment for the roof on the current loss.
  - If the ACV payment of the roof replacement on the new loss is the same or less than the ACV payment amount to replace the roof on the prior loss, no additional ACV payment is due.
- Provide the insured with an Explanation of Building Replacement Cost Benefits based on the new loss, if applicable.

Example: Previous hail damage, paid to repair, repairs not completed, new loss results in total loss to roof.

A policyholder sustains hail damage to the roof in July 2015. The claim handler inspects the damage and estimates to repair two shingles per square for a repair of $1500. After subtracting the $1,000 deductible, a payment of $500 was made for the first claim. The customer did not repair the damage. In April, 2016, the policyholder files a new hail claim in which the roof is determined to be a total loss. In this case adjust the claim as follows:

- Adjust the loss as a separate event, subject to the policy deductible.
- Prepare an estimate to remove and replace the entire roof based on the price list for the April 2016 date of loss.
- Apply depreciation, if applicable. The age and condition of the damaged property, including prior roof damage, should be considered in determining the actual cash value of the current loss.
- Subtract the deductible applicable to the new claim.
- Subtract the prior payment of $500.
- Pay the insured the difference for the new claim.
- An explanation of replacement cost benefits, if applicable should be issued for the recoverable amount on the current loss.

B. Prior Roof Claim, Roof Replaced, Tear-off Not Completed

When a slope or roof has previous damage that we estimated to remove and replace the roof surface, however the insured replaced the roof or slope, but did not tear-off the damaged roof surface handle the new claim in the following manner:

- Adjust the loss as a separate event, subject to the policy deductible.
- If there is new damage to the roof surface, requiring replacement of the same slope or the total roof, estimate to remove all layers of the roof and to replace the roof surface.
- Apply depreciation, if applicable. The age and condition of the damaged property, including prior roof damage, should be considered in determining the actual cash value of the current loss.
- Subtract the deductible for the new claim.
- Deduct prior payments for tear off not completed.
- Pay the insured any difference.
  - If the ACV payment of the roof replacement exceeds the ACV payment to replace the roof on the prior loss, issue a draft to the policyholder for the difference between the ACV payment for the roof on the prior loss and the ACV payment for the roof on the current loss.
  - If the ACV payment of the roof replacement on the new loss is the same or less than the ACV payment amount to replace the roof on the prior loss, no additional ACV payment is due.
- Provide the insured with an Explanation of Building Replacement Cost Benefits based on the new loss, if applicable.

C. Prior Roof Claim, Damage Not Repaired, New Loss After Replacement Cost Benefits Expired

Prior roof claim, damage not repaired and a new loss occurs after the time period to present a claim for Replacement Cost benefits for the prior loss has expired. If there is new damage to the roof surface which, independent of the damage from the prior loss requires total replacement of the roof surface adjust the claim as follows:

- Adjust the loss as a separate event, subject to the policy deductible.
- Prepare an estimate for all roof damages resulting from the current loss using the price list for the current date of loss. This may include the same roof damage estimated on a prior claim that was not replaced or repaired.
- Apply depreciation, if applicable. The age and condition of the damaged property, including prior roof damage, should be considered in determining the actual cash value of the current loss.
- Subtract the deductible for the new claim.
- Deduct prior payments for the roof damage that was not replaced or repaired.
  - Do not deduct amounts that were estimated for the roof, but were at or below the deductible.
- Pay the insured any difference.
  - If the ACV payment of the roof replacement exceeds the ACV payment to replace the roof on the prior loss, issue a draft to the policyholder for the difference between the ACV payment for the roof on the prior loss and the ACV payment for the roof on the current loss.
  - If the ACV payment of the roof replacement on the new loss is the same or less than the ACV payment amount to replace the roof on the prior loss, no additional ACV payment is due.
- Provide the insured with an Explanation of Building Replacement Cost Benefits based on the new loss, if applicable.

Example: Prior roof claim, damage not repaired, new loss occurs after the time period to present Replacement Cost benefits claim has expired.

A policyholder sustains damage to the roof in July 2012, which rendered the roof a total loss. In July 2012 an estimate was written to replace the roof for $7000.00. After applicable depreciation and the $1,000 policy deductible, the claim handler made an ACV payment of $4000.00. The customer did not complete repairs of the roof.

In April, 2015, a new hail storm damaged the roof. It was determined that the new damage was distinguishable from the old damage and would total the roof. The estimate for the roof replacement with current roof prices was $7,500.00. After appropriate depreciation is applied, the current deductible and the prior payment of $4000.00 should be subtracted from the loss. The insured should be paid the difference, if any, for the new claim. A new explanation of replacement cost benefits should be issued for the recoverable amount, if applicable.

D. Prior Roof Claim, Damage Not Repaired, New Loss Before Replacement Cost Benefits Expired

Prior roof claim, roof/slope was a total loss, and damage not repaired. A new loss occurs before the time period to present a claim for replacement cost benefits for the prior loss has expired. In this situation, if there is new damage to the roof surface which, independent of the damage from the prior loss requires total replacement of the roof surface, the claim should be adjusted in the same manner as noted in C. above.

Prior roof claim, roof/slope was a total loss, and damage not repaired. In the event the new damage does not require replacement of the same slope or roof surface, advise the insured of same. If the roof surface is replaced, a claim for replacement cost benefits can be presented within the appropriate time period based on the prior claim's date of loss and applicable policy provisions.

E. Prior Roof Claim, Damage Not Repaired, Insured took Reasonable Steps to Mitigate and Arrange for Repairs

Prior roof claim, damage not repaired, but the insured took reasonable steps to mitigate the damages and arrange for repairs. If the damage to the roof has not been repaired, but the insured took reasonable steps to mitigate the damages and arrange for repairs, handle the loss under the prior claim. Some of the factors to consider when determining if the insured took reasonable steps include:

- Time between the initial and subsequent loss
- Resources available to complete the repairs following the initial loss

If the insured fails to take reasonable steps to mitigate the damages and arrange for repairs, a subsequent event would be a separate claim. Evaluate each claim individually on its own merits.

Example: Wind damage to roof, followed by interior damage resulting from a subsequent loss prior to repairs being completed.

In July 2016 a windstorm ripped off a portion of the roof. In September 2016 a new storm causes additional water damage to drywall because the roof was not yet repaired. In this circumstance if the insured took reasonable steps to mitigate the damages and arrange for repairs, handle the September 2016 water loss under the July 2016 claim.

The insured has a prior roof claim for wind damage, which we estimated to repair. Prior to the repairs being completed, another storm occurs resulting in new damage which totals the roof. Reasonable steps the insured may have taken to mitigate damages or arrange for repairs would not have prevented the second loss from occurring. It is for this reason, this loss would be handled as a separate claim.

Example: Wind damage to roof in July 2015, we estimated to repair the roof for $2000. After applying the $1000 deductible we issue a payment for $1000. Prior to the repairs being completed another storm in September 2015 results in new hail damage which totals the roof. We prepare an estimate to remove and replace the roof for $10,000.

In this circumstance adjust the claim as follows:

- Adjust the loss as a separate event, subject to the policy deductible.
- Prepare an estimate for all roof damages resulting from the current loss using the price list for the current date of loss. This may include the same roof damage estimated on a prior claim that was not replaced or repaired.
- Apply depreciation, if applicable. The age and condition of the damaged property, including prior roof damage, should be considered in determining the actual cash value of the current loss.
- Subtract the deductible for the new claim.
- Deduct prior payments for the roof damage that was not replaced or repaired.
    - Do not deduct amounts that were estimated for the roof, but were at or below the deductible.
- Pay the insured any difference.
    - If the ACV payment of the roof replacement exceeds the ACV payment to replace the roof on the prior loss, issue a draft to the policyholder for the difference between the ACV payment for the roof on the prior loss and the ACV payment for the roof on the current loss.
    - If the ACV payment of the roof replacement on the new loss is the same or less than the ACV payment amount to replace the roof on the prior loss, no additional ACV payment is due.
    - Provide the insured with an Explanation of Building Replacement Cost Benefits based on the new loss, if applicable.

F. Prior roof claim, damage was fully repaired, but the insured spent less than was estimated to repair, (and the repair was structurally proper):

- Adjust the second loss as a separate event.
- Do not deduct the payment from the prior loss.

G. Prior roof loss, insured did not present claim or the prior claim was less than the deductible:

If the insured did not make a claim for the prior damage or the prior claim was less than the deductible, do not reduce the new loss by the amount of the prior loss.

Example:

A policyholder sustains hail damage to the roof in July, 2015. The claim handler inspects the damage and estimates to repair two shingles per square for a total estimate of $700. The policyholder has a $1,000 deductible and the claim is closed without payment. In April 2016, the policyholder files a new hail claim which totals the roof. The total roof estimate is $5,000 after applying applicable depreciation. In this case, subtract the $1,000 deductible from the new claim estimate of $5,000 and pay the customer $4,000. There is no offset for the July 2007 claim because no payment was made. An explanation of replacement cost benefits if applicable should be issued for the recoverable amount.

Each claim needs to be handled on its own merits and management should be involved in situations needing additional resolution.

Top of Page

## XI. MATCHING - UNDAMAGED EXTERIOR BUILDING MATERIALS

Refer to: OG 75-100, Claim Application - First Party Section III. B. Matching

Top of Page

## XII. ROOFING PRODUCTS - LIMITED OR NO AVAILABILITY

During the course of an investigation, damaged roofing products which have limited or no availability can be encountered. Suitable replacement products can be determined by reviewing product design characteristics such as; appearance, warranty, and composition of the product along with the performance standards as outlined in the applicable building code. Characteristics like these will help identify a replacement product which is of like kind and quality. Locator Services is a resource to assist in determining the availability of a roofing product in a specific location and identifying an appropriate replacement roofing product.

Decisions regarding appropriate replacement roofing products should be reviewed with input from local claim management.

Refer to: OG 75-100, III. B. Matching - UNDAMAGED EXTERIOR BUILDING MATERIALS

Top of Page

## XIII. ROOF WARRANTIES

Many roof installations are accompanied by a written warranty issued by the shingle manufacturer. Some roofs are stated to be impact resistant, others have wind speed warranties. Some contractors issue written warranties covering their work for a period of time. It is important to ask the insured for a copy of any warranty they may have on their roof to support our investigation as it relates to potential subrogation efforts. The Locator Services or T.I.P.P. may also be a resource in locating manufacturer's warranty information.

Roof warranty claims may be presented for consideration along with a claim for potential roof damage. The Homeowners policy provides coverage for Accidental Direct Physical Loss (ADPL) for property described in Coverage A - Dwelling, except as provided in Section I - Losses Not Insured. ADPL does not include a claim for a voided warranty. Review each claim based on the individual facts and circumstances. Questions should be reviewed with claim management.

Top of Page

## XIV. BUILDING CODE/ORDINANCE AND LAW

Our obligation is to replace the damaged property in accordance with the Loss Settlement Provisions. If certain repairs, replacements or construction techniques are required to comply with the state law or local ordinance, the insured is responsible for the difference in the cost. Payment should be limited to the portion of loss covered by the policy contract. We will not pay for increased costs resulting from enforcement of any ordinance or law except as provided in Option OL or another policy endorsement.

Refer to: OG 75-107 Optional Coverages - Section IV - Option OL

Building ordinance or law questions should be referred to claim management. Building codes and their effect on claims adjusting procedures should be researched.

Refer to: OG 75-51, Replacement Cost â€" Building, OG 75-105, Claim Interpretations - Losses Not Insured

Top of Page

## XV. COMMUNICATION WITH THE POLICYHOLDER

Review the scope of the loss in person or by telephone; provide the insured with a copy of the Xactimate estimate, Structural Damage Claim Policy and Explanation of Building Replacement Cost Benefits Form if replacement cost benefits are available.

An Explanation of Building Replacement Cost Benefits Form is generally not required on repairable items. However, complete an Explanation of Building Replacement Cost Benefits Form when total replacement of a slope or the roof is made on an ACV basis. Include replacement of other depreciable items (for example, siding, painting) on the Explanation of Building Replacement Cost Benefits Form.

When the inspection indicates there is no damage/partial damage to the roof surface itself, this information should be communicated to the insured. When making a payment for partial damages to a roof, it is important to document all damage as well as areas where no accidental direct physical loss is found. Discuss the scope of the roof damage, or lack of damage with the insured, with an explanation of coverage.

Top of Page

## XVI. ADDITIONAL INSPECTION GUIDELINES

Refer to: OG 75-01, First Party Claim Handling Procedures - E. Additional Inspection Guidelines.

Top of Page

## XVII. APPRAISAL/ADR/ARBITRATION

Based on the facts and circumstances of an individual roof claim appraisal, ADR or arbitration may be an appropriate method of claim resolution. Claim management should be involved when appraisal, arbitration or ADR is considered.

Refer to: OG 75-09, Appraisal, OG 70-25, Alternative Dispute Resolution and/or OG 70-80, Arbitration

Top of Page

STATE FARM CONFIDENTIAL INFORMATION
- Distribution on a Business Need to Know Basis Only -